**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOE HAND PROMOTIONS, INC.,

    Plaintiff,

v.                                                Case No. 8:12-cv-2681-T-23TBM

WILD FISH NIGHTCLUB, LLC n/k/a
WILD FISH PARTNERS, LLC, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court for a Report and Recommendation on Plaintiff's **Motion for Default Judgment** (Doc. 35) and **Memorandum of Points and Authorities in support of Plaintiff's Application for Default Judgment** (Doc. 36).  For the reasons set forth herein, I recommend that the Motion (Doc. 35) be **GRANTED in part**.

In November 2012, Joe Hand Promotions, Inc. ("Plaintiff") sued Wild Fish Nightclub, LLC, now known as Wild Fish Partners, LLC, which at pertinent times did business as Wild Fish Nightclub (collectively "Wild Fish"), as well as Jennifer Hensel and Timothy Stokes,[1] individually and as officers, directors, shareholders, and/or principals of Wild Fish ("Defendants") for alleged violations of 47 U.S.C. §§ 553 and 605 of the

---

[1] Rachel Peasley and Steve Peasley were also named as party-Defendants.  Both filed answers (Docs. 18, 19).  After discovery from the Peasleys, Plaintiff filed a Notice of Voluntary Dismissal on December 11, 2013, as to both.  (Doc. 40).  Accordingly, the instant Motion for Default Judgment pertains solely to the remaining Defendants.

Communications Act of 1934, as amended. (Doc. 1). Plaintiff effected service on Defendant Timothy Stokes on January 21, 2013, and Defendants Jennifer Hensel and Wild Fish on January 29, 2013. (Docs. 6, 9-11). Defendants failed to file an answer or otherwise appear in this case. On April 12, 2013, Plaintiff moved for entry of default based on Defendants' failure to file a response to the Complaint, (Doc. 21), and the Clerk entered default on April 15, 2013, (Docs. 22-25). Plaintiff now seeks entry of a final default judgment against Defendants awarding it $62,007.55, which includes $10,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), $50,000 in enhanced damages under §605(e)(3)(C)(ii), $1,500 in attorneys' fees, and $507.55 in costs. (Doc. 36).

I.

Plaintiff is a closed-circuit distributor of sports and entertainment programming to commercial establishments. Here, Plaintiff sold the commercial exhibition rights to the "UFC 117: Silva v. Sonnen" broadcast scheduled for August 7, 2010 (hereinafter "the Event").[2] In particular, it marketed the sub-licensing rights for the Event to its commercial customers who were required to enter into a contractual agreement with Plaintiff and pay Plaintiff a sub-license fee to broadcast the Event.[3] The amount of the fee was calculated based on the occupancy of the commercial establishment. The Event was transmitted by interstate satellite

---

[2]In additional support of its Motion, Plaintiff has filed the affidavit of Joe Hand, Jr., the President of Plaintiff, Joe Hand Promotions, Inc., (Doc. 36 at 17-25), along with a copy of its distributorship agreement (Doc. 36 at 26-42), its rate card (Doc. 36 at 43), and the affidavit of Raymond Torres, the auditor (Doc. 36 at 44-45).

[3]A residential cable subscriber could obtain the Event by purchasing it for a fee from the cable provider.

transmission, which was electronically coded/scrambled and was not intended for use by the general public. Upon payment of the fee, the sub-licensee was provided decoding equipment and the satellite coordinates necessary to receive the signal. In order to combat the illegal exhibition of its licensed programming, Plaintiff hired independent auditors to identify and visit commercial establishments that exhibited the programming without its authorization. *See* (Docs. 1, 36).

By its three-count Complaint, Plaintiff alleges that on August 7, 2010, Defendant Wild Fish exhibited the Event without paying a sublicense fee. On that night, auditor Raymond Torres visited Wild Fish at approximately 10:45 p.m. and observed the Event being broadcasted to Wild Fish patrons. *See* Torres Affidavit (Doc. 36 at 44-45). Torres was charged a $5.00 cover charge to enter the establishment. *Id*. He estimated the capacity of Wild Fish to be approximately 250 patrons, but during his visit, Mr. Torres did three head counts and observed, at most, seventy-five patrons at the establishment. *Id.* The Event was displayed on between ten to twelve television sets. *Id.* Plaintiff alleges that since Wild Fish is a commercial establishment, it could not have obtained the transmission of the Event had the Defendants not undertaken specific wrongful actions to intercept and/or receive and broadcast the Event. While Plaintiff is unable to discern by which method Defendants obtained access to the Event unlawfully, Plaintiff posits that it is "logical to conclude that Defendants, used an illegal satellite receiver, misrepresented its business establishment as a residence, or removed an authorized residential receiver from one location to a different commercial location to intercept Plaintiff's Broadcast" in violation of 47 U.S.C. § 605. (Doc. 1 at 7).

In Count I, Plaintiff sues Defendants for willful violation of 47 U.S.C. § 605(a), which prohibits the unauthorized reception and publication or use of communications to which Plaintiff held the distribution rights.  In Count II, Plaintiff sues Defendants for violation of 47 U.S.C. § 553, which prohibits the unauthorized reception, interception and exhibition of any communications service offered over a cable system to which Plaintiff had the distribution rights.[4]  By Count III, Plaintiff alleges that Defendants tortuously obtained possession of the Event and wrongfully converted it to its own use and benefit, which then subjected Plaintiff to economic distress.  The Complaint seeks an award of statutory damages for the alleged violations under 47 U.S.C. §§ 533 and 605, compensatory damages on Count III, and attorneys' fees and costs.  *See* (Doc. 1).

Pursuant to the Affidavit of Joe Hand, Jr., the sublicense fee due from Wild Fish for the legal transmission of the Event would have been based on the maximum fire code occupancy of Wild Fish (Doc. 36 at 19), which is estimated by Mr. Torres's Affidavit as being 250 patrons, (Doc. 36 at 44).  Thus, pursuant to Plaintiff's rate card, Wild Fish would have had to pay a commercial sublicense fee of $1,600.  (Doc. 36 at 43).  To the extent that Plaintiff seeks a finding that the Defendants acted willfully, Mr. Hand asserts that Defendants must have known that Wild Fish was not to receive or exhibit the Event without authorization when it unlawfully intercepted or de-scrambled the satellite signal and exhibited the Event to

---

[4]Plaintiff acknowledges that it is unable to discern whether Defendants intercepted Plaintiff's signal via a cable system in violation of 47 U.S.C. § 553, or via a satellite transmission in violation of 47 U.S.C. § 605.  Plaintiff alleges both counts in its Complaint, but recognizes that Defendants can be liable under only one of these statutes.

its customers because its programming "is not and cannot be mistakenly, innocently, or accidentally intercepted" (Doc. 36 at 20).

## II.

Pursuant to Federal Rule of Civil Procedure 55, a default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue." *Solaroll Shade & Shutter Corp., v. Bio-Energy Sys., Inc.,* 803 F.2d 1130, 1134 (11th Cir. 1986). By the entry of default, a defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). However, a defendant's default does not in itself warrant the court to enter a default judgment. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). There must be a sufficient basis in the pleadings for the judgment entered. *Id.* "Accordingly, in ruling on a motion for default judgment the Court must examine in further detail the defendant's liability under the causes of action alleged in the complaint." *DirectTV, Inc. v. Trawick*, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005). Whether to grant a motion for default judgment is within the trial court's discretion. *Adolph Coors Co. v. Movement Against Racism & the Klan,* 777 F.2d 1538, 1542 (11th Cir. 1985).

The Court must also consider whether an evidentiary hearing on damages is warranted. *See* Fed. R. Civ. P. 55(b)(2)(B) (court may conduct hearing to determine amount of damages); *SEC v. Smyth*, 420 F.3d 1225, 1231-32 (11th Cir. 2005) (providing that an evidentiary hearing should be conducted if the amount of damages sought is not a liquidated

5

sum or one capable of mathematic calculation, but a hearing is not necessary where all essential evidence is already of record).

### III.

The allegations set forth in Plaintiff's Complaint adequately state claims under the Communications Act for the unauthorized interception and reception of cable programming services and/or the wrongful receipt and publication of an interstate communication through unauthorized channels of transmission or reception. More particularly, 47 U.S.C. § 553(a)(1) provides that: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 605(a) provides in pertinent part that: "[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . ." Thus, to state a claim under the 47 U.S.C. §§ 553 and 605, a plaintiff must allege that a defendant has: (1) intercepted or aided the interception of the program, (2) not paid for the right to receive the transmission, and (3) divulged or published, or aided the divulging or publishing of the program to patrons of defendant's establishment. *J & J Sports Prods., Inc. v. Park*, No. 1:12-CV-2026-CC, 2013 WL 1320512, at *3 (N.D. Ga. Mar. 28, 2013).

While Section 553 applies solely to transmissions via cable systems, Section 605(a) has also been held to apply to cable-borne transmissions which originate as satellite

6

transmissions.⁵  *See J & J Sports Prods., Inc. v. Arboleda,* No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859 (M.D. Fla. Oct. 27, 2009); *Kingvision Pay-Per-View Corp., Ltd. v. Wright,* No. 8:06-cv-892-T-30MAP, 2006 WL 4756450 (M.D. Fla. Oct. 27, 2006).  Under such a view, when pay-for-view television programming is transmitted over both cable and satellite mediums, both statutes apply.

A.

The Complaint, together with the affidavits of Mssrs. Hand and Torres establish Wild Fish's liability under Sections 605(a) and 553.  Plaintiff owned the exclusive distribution rights to the Event; as a commercial establishment, Wild Fish could not lawfully show the Event absent a license/contract with Plaintiff permitting it to do so; despite not having such license, Wild Fish displayed the Event to seventy-five of its patrons, each of whom paid a $5.00 cover charge to watch the Event over multiple televisions within the establishment; and the broadcast was unlawfully obtained and displayed at Wild Fish by means of a willful and knowingly wrongful act by Defendants or someone at their direction for purposes of financial

---

⁵There is disagreement among the circuits about whether Section 605 covers the interception of cable services carried over a cable network. *See Park*, 2013 WL 1320512, at *3 (summarizing the circuit split and highlighting the relevant case law); *Joe Hand Promotions, Inc. v. ADJ Entity, LLC.,* No. 3:11-cv-90 (CAR), 2011 WL 4102314, at *3 n.3 (M.D. Ga. Sept. 14, 2011) (same).  Given that Plaintiff establishes a clear violation of Section 605 in that its coded satellite signals of the Event were improperly received and broadcasted at Wild Fish without license, the Court does not need to weigh-in on this conflict.

7

gain.⁶ Thus, by virtue of their default, the Defendants have admitted to the unlicensed and unlawful receipt and broadcast of the Event in violation of Sections 553 and 605.⁷

B.

When a defendant's conduct has violated both Sections 553 and 605 of the Communications Act, a plaintiff may recover damages under only one of those sections. *See Arboleda*, 2009 WL 3490859, at *4; *Wright*, 2006 WL 4756450, at *2 *(citing Int'l Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1008 (2d Cir.1993); *Time Warner Cable of N.Y.C. v. Barnes,* 13 F. Supp. 2d 543, 547 (S.D.N.Y.1998)). "A plaintiff may, however, elect to recover damages under [S]ection 605 in consideration of a higher damages award." *Wright*, 2006 WL 4756450, at *2 (*citing Barnes* at 457).

Here, Plaintiff has elected to recover damages under Section 605, which provides for higher statutory damages. Under Section 605(e)(3)(C)(i)(II), a plaintiff may recover statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." Under 47 U.S.C. § 605(e)(3)(C)(ii), when the court finds that the statute was violated

---

⁶While Plaintiff is unable to discern by which method Defendants obtained access to the broadcast of the Event, I think that unnecessary in these circumstances. The safeguards employed by Plaintiff to guard against piracy ensure against innocent and accidental reception of the signal.

⁷As for Defendants Jennifer Hensel and Timothy Stokes, in order to hold them vicariously liable, individually and as an officer, director, shareholder and/or principal of Wild Fish under 47 U.S.C. §§ 553 and 605, Plaintiff must show that Hensel and Stokes had "a right and ability to supervise the violations, and that [they] had a strong financial interest in such activities." *Arboleda*, 2009 WL 3490859, at *5 (quoting *J & J Sport Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008)). By virtue of default, Hensel and Stokes have admitted that they had a right and ability to supervise the violations and that they received a financial benefit from unlawfully broadcasting the Event. Therefore, Plaintiff is entitled to joint and several liability for damages against Hensel and Stokes in an individual and corporate capacity.

8

"willfully and for the purpose of commercial advantage or private financial gain," it may, in its discretion, award enhanced damages of up to $100,000.

Here, there is no need for an evidentiary hearing since the record adequately reflects a basis for the award of statutory damages. Pursuant to Section 605(e)(3)(C)(i)(II), Plaintiff seeks the maximum amount, $10,000, arguing such is due based on its losses and Defendants' unlawful gain. *See* (Doc. 36 at 8-11, 22-24). I have carefully considered the circumstances together with Plaintiff's and its principal's arguments and conclude that a lesser sum is more appropriate to these circumstances.

Courts in the Middle District and throughout the Circuit have concluded that an award of statutory damages based on the applicable sublicense fee that defendants would have paid had they legally purchased the event is an appropriate measure for such award. *See Arboleda,* 2009 WL 3490859, at *7 (awarding statutory damages in the amount of $2,600 based on plaintiff's rate card detailing the fee for establishments with a maximum capacity of 150 patrons); *Wright*, 2006 WL 4756450, at *4 (awarding statutory damages in the amount of the sublicense fee that would have been charged for the legal transmission of the event ); *see also ADJ Entity, LLC*, 2011 WL 4102314, at *4 (awarding statutory damages in the amount of $1,500 based on the plaintiff's rate card detailing the fee for establishments with a maximum capacity of 193 patrons).

Here, Plaintiff's rate card indicates that Defendants would have paid a fee of $1,600 based on the capacity of the establishment. (Doc. 36 at 43). Additionally, Plaintiff demonstrates that Defendants achieved minimal financial gain in the form of a cover charge for entry into the establishment that evening. Thus, by Mr. Torres's Affidavit, seventy-five

9

patrons paid a $5.00 cover charge to view the Event.  Accordingly, using these two factors as a guide, I recommend awarding Plaintiff **statutory damages in the amount of $1,975.00** pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

I conclude that the willful nature of the violation also calls for an award of enhanced damages under Section 605(e)(3)(C)(ii).  As aforementioned, by virtue of default, Defendants have admitted to unlawfully exhibiting the Event at Wild Fish, in a willful manner and for financial gain.  To accomplish this interception and broadcast, Defendants necessarily undertook some affirmative and unlawful steps to obtain the signal and broadcast the Event.  Thus, enhanced damages are appropriate.  Plaintiff urges an award in the amount of $50,000 in order to achieve the statutory goals of restitution and deterrence.  By his affidavit, Joe Hand, Jr. urges that persistent signal piracy costs his company, its customers, and communities millions of dollars annually and such results, in part, from the perceived lack of consequences to the signal pirates, despite the willful nature of the piracy.  I conclude that a lesser sum is in order.

In considering the amount to be awarded,

> [c]ourts use a number of factors in determining whether a defendant's willful conduct justifies increased damages: i) repeated violations over an extended period of time; ii) substantial unlawful monetary gains; iii) advertising of the broadcast; iv) charging of a cover charge or premiums for food and drinks; or v) plaintiff's significant actual damages.

*Arboleda*, 2009 WL 3490859, at *7.  In considering these factors, the Court "must strike a balance between deterring other incidents of piracy by these Defendants and others, and not making the award such that it will pout a small business out of business." *Id.* (citing *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 64 (E.D.N.Y. 2006)).

10

Here, although Wild Fish charged a cover charge of $5.00 per patron, there is no evidence that Wild Fish has repeatedly violated the statutes, that it widely advertised the Event, or that it reaped other substantial financial gain. Thus, the Court is confronted with a willful act by a relatively small club for which there is little demonstration of actual loss to Plaintiff or substantial gain on the part of the Defendants. In the circumstances, I find that it is appropriate to award enhanced damages which are proportional to the above award of statutory damages. This measure for enhanced awards is in line with prior rulings of judges in the Middle District and other courts of this Circuit. *See Arboleda*, 2009 WL 3490859, at *7 (awarding enhanced damages of three times the sublicense fee where establishment was a first-time offender); *Wright*, 2006 WL 4756450, at *3 (same); *see also ADJ Entity, LLC,* 2011 WL 4102314, at *5 ("For first-known violations of the statutes, courts in our circuit have awarded enhanced damages of three times what it would have cost [d]efendants to lawfully exhibit the [p]rogram."). Thus, under this measure, Plaintiff should receive enhanced damages amounting to three times the statutory damages of $1,975.00, that is, $5,925.00. While not a large sum, it appears an adequate punitive amount to deter future piracy by these Defendants.[8] *See Wright*, 2006 WL 4756450, at *3 n.8 ("[T]he Court finds that an additional penalty pursuant to section 605(e)(3)(C)(ii) in the amount of three times the actual damages provides a sufficient deterrent to future violations by Defendant and other establishments.").

---

[8]It is not clear that the Ms. Hensel or Mr. Stokes, individually or as officers, directors shareholders and/or principals of the LLC have an interest in the Wild Fish Nightclub or that the club is still operating as such.

Accordingly, Plaintiff should be awarded **$5,925.00 in enhanced damages** under Section 605(e)(3)(C)(ii).

Because Defendants' liability has been established under Section 605, I further find that Plaintiff is entitled to its attorneys' fees and costs incurred in this matter, pursuant to 47 U.S.C. 605(e)(3)(B)(iii).  Plaintiff seeks $1,500 in attorneys' fees and $507.55 in costs. William Yanger, counsel for Plaintiff, has submitted an affidavit in support of Plaintiff's request for fees and costs.  *See* Yanger Affidavit (Doc. 37).  Therein, he estimates that attorneys for Plaintiff expended a minimum of six hours on the instant suit.  At a rate of $250 an hour, he requests $1,500.  In the undersigned's experience, $250.00 per hour is well within the range of reasonable hourly rates charged for this type legal work in this market.  The number of hours expended also appears reasonable.  Thus, Plaintiff is entitled to **$1,500 in attorneys' fees**.

As for costs, Plaintiff seeks to recoup the $350.00 filing fee and $157.55 process server fee.  As these are recoverable fees under 28 U.S.C. § 1920(1), the request is granted. *See Arboleda*, 2009 WL 3490859, at *8 (awarding $630.00 in costs for filing and service of process fees); *Wright*, 2006 WL 4756450, at *3 (awarding $405.00 in costs for filing and service of process fees); *see also Arista Records LLC v. Gaines*, 635 F. Supp. 2d 414, 418 (E.D.N.C. 2009) (discussing the congressional intent to make service of process by methods other than the U.S. Marshal Service a taxable item).  Accordingly, Plaintiff should be awarded **$507.55 in costs**.

IV.

For the reasons set forth above, I recommend that **Plaintiff's Motion for Default Judgment** (Doc. 35) be **GRANTED in part**, to the extent that default judgment be entered in favor of Plaintiff and against Jennifer Hensel, Timothy Stokes, and Wild Fish Nightclub, LLC n/k/a Wild Fish Partners, LLC in the amount of **$9,907.55**.

Respectfully submitted on this
11th day of February 2014.

_____
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
United States District Judge
Counsel of Record